UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VIDAL MATEO,
    *Petitioner*,

    v.

WARDEN, FCI Danbury,
    *Respondent*.

No. 3:25-cv-00814 (VAB)

**RULING AND ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER
AND PETITION FOR A WRIT OF HABEAS CORPUS**

Vidal Mateo ("Petitioner"), currently incarcerated at the Federal Correctional Institute in

Danbury, Connecticut ("FCI Danbury"), filed this petition for a writ of habeas corpus under 28

U.S.C. § 2241 to challenge his arrest and return to prison while he was in prerelease custody

under time credits earned under the First Step Act, 18 U.S.C. § 3632 ("First Step Act" or

"FSA"), and the Second Chance Act, 18 U.S.C. § 3624, due to a 2003 immigration detainer. Pet.,

ECF No. 1 at 7. Petitioner also filed a motion for a temporary restraining order seeking his return

to prerelease custody, as well as injunctive relief against further attempts to reincarcerate him

based on his immigration detainer. TRO, ECF No. 3 at 9 ("TRO").

Respondent has filed a response to the Court's order to show cause. Resp't. Response,

ECF No. 10 ("Response"). Petitioner has filed a reply to Respondent's response. Petr. Reply,

ECF No. 16 ("Reply").

For the following reasons, the petition for a writ of habeas corpus is **GRANTED**, and the

motion for a temporary restraining order is **DISMISSED** as moot.[1]

---

[1] Because the Court finds, based on the pleadings, that no issues of fact remain unresolved, it may grant the habeas petition without holding a hearing. *See* 28 U.S.C. § 2243 (detailing the proper procedure for granting a writ of habeas corpus); *Walker v. Johnston*, 312 U.S. 275, 284-5 (1941) (interpreting Section 2243 to require a hearing

The Court **ORDERS** that:

1. Respondent shall immediately transfer Mr. Mateo to prerelease custody. Respondent shall not remove Mr. Mateo from prerelease custody based on his immigration status alone, absent a material change to the factual record before the Court.

2. Should a material change in the factual record occur, the Respondent must immediately notify Mr. Mateo's counsel and this Court before any change in Mr. Mateo's custodial status is effectuated.

3. Respondent shall file a status report by **September 19, 2025**, informing the Court as to whether Mr. Mateo has been returned to prerelease custody.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

On January 7, 2025, after having served over two decades in federal prison, Mr. Mateo entered prerelease custody at a Residential Reentry Center ("RRC"), also known as a halfway house, "by operation of his [First Step Act] credits." *See* Response at 2. During Mr. Mateo's time at the RRC, he did not incur any disciplinary infractions. *See* TRO at 1.

On January 30, 2025, the Bureau of Prisons ("BOP") issued a policy interpreting 18 U.S.C. § 3632(d)(4)(E), the provision of the First Step Act detailing deportable prisoners' ineligibility to apply time credits ("January 2025 policy"). The policy stated that "pending placements in pre-release custody for application of Federal Time Credits (FTC) for all non-U.S. citizens with active detainers will be canceled. Cancelation will occur in all cases where a detainer is lodged and includes cases where a final order of deportation has not been issued. Institutions should immediately halt referral of all such cases." Reply at 13.

---

when an issue of fact is presented and excusing a hearing when, "on the facts admitted, it may appear that, as matter of law, the prisoner is entitled to the writ and to a discharge[]").

On February 10, 2025, a month after his arrival to the RRC, the BOP re-arrested Mr. Mateo in accordance with the January 2025 policy and returned him to FCI Danbury, where he remains confined. Reply at 2; *see also* Response, Exhibit B at 1. Although Mr. Mateo was initially unaware of why he was re-arrested, he later learned that his reincarceration was due to an immigration detainer that was issued shortly after his conviction in 2003. TRO at 1; Reply at 2. At the time of his last pleading, Mr. Mateo had never been subject to a final order of removal. TRO at 5; *see generally* Reply.

Following his reincarceration, Mr. Mateo filed both a habeas petition under 28 U.S.C. § 2241 and a motion for a temporary restraining order.

### B. Procedural History

On May 22, 2025, Mr. Mateo filed both a habeas petition under 28 U.S.C. § 2241 and a motion for a temporary restraining order against the Warden of FCI Danbury ("Respondent"), arguing that he was being confined at FCI Danbury in violation of the laws of the United States, specifically the First Step Act, *see* 18 U.S.C. § 3632(d)(4)(A)–(E) and 18 U.S.C. § 3624(g)(1)–(2).

At the time of the May 22nd filing, Mr. Mateo had been returned to FCI Danbury where he had previously been serving a sentence for federal offenses.

On May 22, 2025, the Court issued an order to show cause as to why the relief requested by Mr. Mateo in the petition and motion should not be granted. Order to Show Cause, ECF No. 4.

On June 13, 2025, Respondent filed a response to the Court's order to show cause arguing that "(1) the petitioner failed to exhaust administrative remedies prior to filing the

petition; and (2) the First Step Act (the "FSA") does not require that the petitioner's FSA credits be applied to compel his placement into prerelease custody." Response at 1.

On August 18, 2025, Petitioner filed a reply arguing that "Mr. Mateo's failure to exhaust his administrative remedies is excusable because no remedies were in fact available to him and any attempt to exhaust would have been futile[,]" and that the FSA does compel Mr. Mateo's placement in prerelease custody at a RRC. Reply at 4. On September 10, 2025, Respondent submitted an updated FSA Time Credit Assessment sheet stating that Mr. Mateo had accrued 1,155 time credits as of August 29, 2025. ECF No. 19, Exhibit 1, 1.

## II.    STANDARD OF REVIEW

A federal prisoner may petition for habeas relief if he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (internal citations omitted). Thus, habeas petitioners may seek relief under Section 2241 "to challenge 'such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.'" *McPherson v. Lamont*, 457 F. Supp. 3d 67, 74 (D. Conn. 2020) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001), and collecting other Second Circuit cases).

The petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

III.    **DISCUSSION**

As a threshold matter, the Court must address whether Mr. Mateo exhausted his administrative remedies before filing this habeas petition, and if so, then determine whether his petition may be granted.

The Court will address each issue in turn.

**A.  The Exhaustion of Administrative Remedies**

Prisoners are ordinarily required to exhaust administrative remedies before filing a federal habeas petition under Section 2241. *See Guida v. Nelson*, 603 F.2d 261, 262 (2d Cir. 1979) ("[E]xhaustion of administrative remedies is required before habeas relief be granted."). Depending on the nature of the lawsuit, the exhaustion of administrative remedies may be statutory or prudential.

Claims challenging the "conditions of confinement" are subject to exhaustion under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Jones v. Smith*, 720 F.3d 142, 147 (2d Cir. 2013) (holding that the PLRA's statutory exhaustion requirement applies to challenges to conditions of confinement that are analogous to actions brought under 42 U.S.C. § 1983, and not to claims challenging the fact or duration of confinement).

Alternatively, claims challenging the "fact or duration of confinement" are subject to prudential exhaustion. *See Carmona*, 243 F.3d at 633–34  (holding that habeas petitions brought under Section 2241 are subject to the same prudential exhaustion requirements, and its exceptions, as petitions brought under sections 2254 and 2255); *see also Reyes v. Keane*, 90 F.3d

676, 678 (2d Cir. 1996) (holding that the PLRA's statutory exhaustion requirements do not apply to habeas proceedings under Section 2254).

The distinction between statutory and prudential exhaustion matters because statutory exhaustion requirements are mandatory, while prudential exhaustion requirements are discretionary. *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003) ("This Court has explained that the distinction between the two exhaustion requirements can be pivotal, because statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions.") (internal citation omitted).

Under the PLRA, prisoners are only exempt from exhausting administrative remedies where no such remedies exist. *See Ross v. Blake*, 578 U.S. 632 (2016) (holding that aside from the textual exception that inmates "need not exhaust unavailable [remedies,]" the PLRA "refutes a 'special circumstances' exception to its rule of exhaustion."). For judicial exhaustion, the Second Circuit has four exceptions in habeas actions: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain circumstances [the petitioner] has raised a substantial constitutional question." *Beharry*, 329 F.3d. at 62.

The Respondent argues that Mr. Mateo may not seek judicial relief because he has not yet statutorily exhausted his claim. The Respondent further argues that a prisoner who challenges where they are incarcerated is challenging a condition, rather than the fact, of their confinement. As a result, Respondent argues that Mr. Mateo should be subject to the PLRA's stricter exhaustion requirements. Response at 7.

The Petitioner argues that his claim is subject to prudential exhaustion, the place of confinement concerns the fact or duration of confinement, that prudential exhaustion may be excused on a number of grounds, and to the extent exhaustion is required, it should be excused.

The Court agrees.

A claim challenging the cancellation of good-behavior-time credits, time toward the reduction of a prisoner's sentence, challenges "the very fact or duration of [his] physical imprisonment" for which "[the prisoner's] sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). "[S]uch a challenge is just as close to the core of habeas corpus as an attack on the prisoner's conviction, for it goes directly to the constitutionality of his physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration." *Id.* at 498. Indeed, any challenge to "the *place* of his imprisonment, including the differences in the manner and conditions of imprisonment (such as the degree of physical restriction and rules governing prisoners' activities) that distinguish [halfway houses] from other BOP penal facilities" concerns the "fact or duration" of one's confinement. *Levine v. Apker*, 455 F.3d 71, 78 & n.4 (2d Cir. 2006) (emphasis in original)[2]. Mr. Mateo's claim is no different.

In his habeas petition, Mr. Mateo asserts that by returning him to prison and depriving him of his FSA time credits, Respondent physically confines him illegally at FCI Danbury. *Preiser*, 411 U.S. at 487 (noting that such a claim falls "squarely within this traditional scope of

---

[2] In *Levine*, the Second Circuit analyzed whether place of confinement concerned the execution or the imposition of his sentence, not for the purposes of assessing the applicability of the Prison Litigation Reform Act's exhaustion requirements, but to determine whether the petitioner properly filed his claim under Section 2241, and consequently whether the court had jurisdiction to hear the claim as filed. In holding that the place of confinement concerns the execution of a sentence, and that the execution of a sentence can be challenged under Section 2241, this Court finds that the place of one's confinement constitutes a "fact or duration" of confinement that can be challenged through the habeas statutes. *See, e.g. Kuzmenko v. Phillips*, 2025 WL 779743 at *4 (Because "the core of Petitioner's claim centers on the BOP exceeding its statutory authority as it pertains to FSA credit application, rather than an individualized, discretionary decision . . . the Court finds that it has subject matter jurisdiction.") (collecting cases).

habeas corpus" as it "would cause [the prisoners] to be in illegal physical confinement, i.e., that once their conditional-release date had passed, any further detention of them in prison was unlawful[]"). Because his petition challenges the fact or duration of his confinement, for which habeas is the sole remedy, his claim is subject to prudential exhaustion requirements.

As noted above, there are four exceptions to prudential exhaustion in habeas corpus actions: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain circumstances [the petitioner] has raised a substantial constitutional question." *Beharry*, 329 F.3d at 62; *see also Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 437 (D. Conn. 2020) (listing the exceptions to the administrative exhaustion requirement for a Section 2241 petition as: "futility ('exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue'); incapability ('exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief'); and undue prejudice ('an unreasonable or indefinite timeframe for administrative action may sufficiently prejudice [petitioners] to justify a federal court in taking a case prior to the complete exhaustion of administrative remedies')") (citations omitted).

Mr. Mateo concedes that he has not exhausted administrative remedies, but argues that he should be excused from doing so for two reasons. First, since his imprisonment was due to a national policy requiring reincarceration of those with immigration detainers that FCI Danbury was required to implement, no remedy would have provided a genuine opportunity for adequate relief. Reply at 7-8. Second, for the same reason, any efforts to exhaust would have been futile. *Id.*

Respondent argues that the very purposes behind prudential exhaustion— "protecting the authority of administrative agencies, limiting interference in agency affairs, and promoting judicial efficiency by resolving potential issues and developing the factual record"; *Beharry*, 329 F.3d at 56 —should necessitate its application. *See* Response at 8-9.

The Court disagrees.

As the Respondent readily concedes, under the January 2025 policy, BOP is required to apply the national policy and "immediately halt prerelease custody referrals or placements for all non-U.S. citizens with immigrations [sic] detainers, unless the inmate has no term of supervision." Response at 12. As a result, Mr. Mateo's compliance with internal administrative procedures would be futile because the BOP has already determined the issue. *See, e.g. Mohammed v. Engleman*, No. 2:25-cv-01011-MWC-MBK, 2025 WL 1909836, at *5 (C.D. Cal. July 9, 2025) ("Petitioner's claim turns on a purely legal challenge to a BOP policy, the agency's policy is unlikely to change, and exhaustion would foreclose federal review due to Petitioner's impending completion of his custodial term (which would moot his claim for release to [a Residential Reentry Center]).") (citation omitted).

Accordingly, because an administrative appeal would provide no genuine opportunity for meaningful relief, and complying with the grievance process would be futile, Mr. Mateo's failure to exhaust is excusable. [3] *See Williams v. Warden, FCI* Berlin, -- F.Supp.3d --, No. 23-cv-509-LM-AJ, 2025 WL 2207024, at *6 (D. N.H., Aug. 4, 2025) ("BOP has issued two memoranda indicating an official agency determination to decline to apply time credits toward placement in

---

[3] Given that Mr. Mateo also alleges irreparable harm – his continued incarceration – the underlying circumstances in this case warrant the waiving of the exhaustion requirement in any event. *See Adepoju v. Scales*, ---. F.Supp.3d ---, No. 3:25-cv-245, 2025 WL 1392287 at * (E.D. Va. May 14, 2025) (because of allegation that "every extra day he has to spend in [incarceration] constitutes irreparable harm . . . this Court finds that exceptional circumstances exist involving irreparable harm to Mr. Adepoju . . . [and] waives the exhaustion requirement."); *Kuzmenko v. Phillips*, No. 2:25-cv-00663, 2025 WL 779743 at *4 (E.D. Cal. March 10, 2025) ("Because the Court finds that irreparable harm exits here, the Court waives the exhaustion requirement.").

prerelease custody for persons with immigration detainers, such that it would be futile for Williams to pursue administrative relief within BOP."); *Mohammed*, 2025 WL 1909836, at *6 ("BOP management has now issued two agency-wide memoranda making clear that the BOP will not transfer individuals with immigration detainers to prerelease custody.") (citation omitted).

### B.  The Merits of the Habeas Petition

Under 18 U.S.C. § 3632(d)(4)(C), "[t]ime credits. . . shall be applied toward time in prerelease custody or supervised release. [And] [t]he Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under Section 3624(g), into prerelease custody or supervised release."

Consistent with the plain text of this provision of the First Step Act, courts across the country have held that the statute imposes a mandatory duty on BOP to apply earned-time credits, subject to statutory eligibility requirements. *See, e.g. Mohammed*, 2025 WL 1909836, at *11 ("Congress's use of the 'shall' twice in Section 3632(d)(4)(C) -- to denote a prisoner's entitlement to application of earned ETCs and BOP's obligation to transfer eligible prisoners – reinforces that the FSA imposes a mandatory requirement."); *Adepoju v. Scales*, 2025 WL 1392287 at *9 ("Like subsection (d)(4)(A), governing the earning of time credits, subsection (d)(4)(C), regarding the application of the credits, is mandatory."); *Redacted v. Federal Bureau of Prisons*, 2023 WL 9530181 (S.D.N.Y. Dec. 28, 2023) at *5 (noting "a consistent line of cases from across the country holding that [18 U.S.C. § 3632(d)(4)(C)] does not afford the BOP any discretion in releasing eligible prisoners. . ."); *see also* TRO at 4-5 (collecting cases).

Nevertheless, Respondent argues that the January 2025 policy and BOP's statutory authority to issue it are justified by three sources of federal law: 18 U.S.C. § 3632(d)(4)(C),

which allows BOP to apply time credits to either prerelease custody or supervised release; 18 U.S.C. § 3621, which allows BOP to choose a prisoner's place of imprisonment; and 18 U.S.C. § 3624(g)(2)(B), which permits BOP to impose conditions on prisoners placed in prerelease custody. Response at 13-15. In its view, the BOP retains discretion to apply credits to either prerelease custody or supervised release, Response at 13; it may return Mr. Mateo to FCI Danbury based on his immigration detainer because it is within its "traditional discretion over a prisoner's place of imprisonment under [18 U.S.C. § 3621,]" which "the FSA has not displaced," Response at 15; and it can impose additional conditions on prisoners placed in prerelease custody under 18 U.S.C. § 3624(g)(2)(B), and not having an immigration detainer is an appropriate additional condition within its statutory authority. Response at 13-15.

In response, the Petitioner argues that a proper reading of the First Step Act requires Mr. Mateo's return to prerelease custody and that there is no statutory authorization for any of the actions taken by the BOP under the January 2025 policy. *See generally* Reply.

The Court will address each argument in turn.

### 1. The Statutory Authority for the Application of Good-Time Credits to Prerelease Custody or Supervised Release

Under 18 U.S.C. § 3632(d)(4)(C), time credits "shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners… into prerelease custody or supervised release."

Respondent argues that, in applying this text, BOP may choose between placing a prisoner in supervised release or community placement, and because of this discretion, BOP did not err when it applied Mr. Mateo's time credits only to modify his statutory release date and accelerate his term of supervised release. Response at 13.

The Court ultimately disagrees.

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022) (citation omitted). In doing so, no clause, sentence, or word should be rendered "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). Indeed, a court must "give effect, if possible, to every clause and word of a statute." *State St. Bank & Trust Co. v. Salovaara*, 326 F.3d 130, 139 (2d Cir. 2003) (citing *Duncan*, 533 U.S. at 174).

The First Step Act limits the number of credits that the BOP may apply towards supervised release to twelve months. *See* 18 U.S.C. § 3624(g)(3) ("[T]he Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632."). But no such limit exists for credits applied to prerelease custody, *see generally* 18 U.S.C. § 3624(g)(2), nor to the overall number of credits an inmate may earn, *see generally* 18 U.S.C. § 3632.[4]

The use of "or" to distinguish between prerelease custody and supervised release simply acknowledges that if an inmate's sentence does not include a period of supervised release, the inmate may only be eligible for prerelease custody. *See, e.g.,* 18 USC 3624(g)(3) ("If the

---

[4] While the FSA does not limit the number of credits an inmate can earn, an inmate is not "eligible" for application of his FSA time credits until the number of credits equals the number of days remaining in his sentence. *See* 18 U.S.C. § 3624(g)(1)(A) (stating that a prisoner is eligible once he "has earned time credits. . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment[]"). According to the record before the Court, and undisputed by the parties, Mr. Mateo had earned a total of 1,095 credits by May 5, 2025. *See* Response, Exhibit C at 1 (noting a total of 1095 credits on the assessment date of May 5, 2025; Response at 10 ("As reflected in Exhibit C, the petitioner also has accrued 730 additional FSA credits beyond the 365 that have been allocated to his early transfer to supervised release[.]"); Reply at 26 ("The pertinent facts are undisputed: Mr. Mateo earned 730 FSA Credits [toward prerelease custody], which are at least equal to the remainder of his term of imprisonment."). On September 10, 2025, Respondent submitted an updated FSA Time Credit Assessment sheet stating that Mr. Mateo had 1,155 time credits as of August 29, 2025. ECF No. 19, Exhibit 1, 1. 790 of these credits have been assigned to prerelease custody, and 365 to supervised release. *Id.*

sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release. . . [BOP] may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632."); *see also Pujols v. Stover*, 2023 WL 4551423 (D. Conn. 2023) (where Petitioner's sentence did not include a term of supervised release, the court "presume[ed] the BOP [would] apply Petitioner's time credits, at the proper time, toward transfer to home confinement or placement in a residential reentry center[]").

Nothing in the First Step Act, however, suggests that if an inmate is eligible for supervised release, then his time credits may not also be applied towards prerelease custody. As a result, for an inmate with a term of supervised release whose number of earned time credits exceeds twelve months, BOP must abide by 18 U.S.C. § 3632(d)(4)(C) to apply the remaining time credits in some fashion, and is also limited by 18 U.S.C. § 3624(g)(3) in the allocation of these time credits.

Thus, while the BOP has discretion to decide whether time credits shall be applied to prerelease custody or supervised release, *see Morales v. Brewer*, No. 2:22-cv-2207 AC P, 2023 WL 3626315, at *2 (E.D. Cal. May 24, 2023) ("Those courts to have considered the issue have uniformly found that whether to apply FSA time credits to prerelease custody or supervised release is within the discretion of the BOP.") (collecting cases), this discretion does not allow BOP to cancel time-credits by applying only some of a prisoner's credits to either prerelease custody or supervised release. In other words, if BOP applied twelve-months' worth of time credits to supervised release, any remaining credits must then be applied to prerelease custody. *See, e.g. Williams*, 2025 WL 2207024, at *3 ("[N]o more than 365 days of FSA time credits can be applied toward early transfer to supervised release. If that maximum is

reached, BOP is required to apply the remaining credits toward placement in prerelease custody (assuming all other statutory criteria for placement in prerelease custody are satisfied).") (citations omitted).

Here, it is undisputed that Mr. Mateo has accrued a total of 1,155 credits. *See* ECF No. 19, Exhibit 1, 1. BOP has allocated 365 of these credits to early transfer of his supervised release term, consistent with its statutory authority. 18 USC 3624(g)(3) ("If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release. . . [BOP] may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.")*. The BOP also seeks, however, to deny application of the credits in excess of 365 – another 790 credits – to prerelease custody, without any express statutory authority under the First Step Act. *See Williams*, 2025 WL 2207024, at *4 ("Because Williams will have time credits remaining after their application toward early placement in supervised release, BOP must apply those remaining time credits towards placement in prerelease custody."); *Mohammed*, 2025 WL 1909836, at *13 ("Because the statute expressly limits the amount of ETCs that can be applied to early supervised release to 12 months, the policy effectively establishes a 365-day cap on ETCs that can be applied for prisoners with immigration detainers. But the statute includes no express cap for prisoners with immigration detainers – or any other group.").

The BOP's decision to do so therefore conflicts with the First Step Act's express language: time credits "shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners… into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C); *see, e.g. Williams*, 2025 WL 2207024, at *5 ("BOP lacks authority to deny application of time credits based on criteria that do not appear in

the FSA."); *Mohammed*, 2025 WL 1909836, at *13 ("This is in direct contrast with the statute's express 365-day limit on applying ETC's to early supervised release.").

Accordingly, there is no basis for denying Mr. Mateo's habeas petition on these grounds.

### 2. The Statutory Authority for the January 2025 Policy Under § 3621(b)

Under 18 U.S.C. § 3621(b), "[t]he Bureau of Prisons shall designate the place of the prisoner's imprisonment . . . [and] may designate any available penal or correctional facility. . . that the Bureau determines to be appropriate and suitable, considering **(1)** the resources of the facility contemplated; **(2)** the nature and circumstances of the offense; **(3)** the history and characteristics of the prisoner; **(4)** any statement by the court that imposed the sentence—**(A)** concerning the purposes for which the sentence to imprisonment was determined to be warranted; or **(B)** recommending a type of penal or correctional facility as appropriate; and **(5)** any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28." Additionally, "a designation of a place of imprisonment under [18 U.S.C. § 3621(b)] is not reviewable by any court." *Id.*

But "Section 3621(b) establishes clear parameters for the BOP's exercise of discretion in making prison placements and transfers." *Levine v. Apker*, 455 F.3d 71, 87 (2d Cir. 2006).

And a BOP rule prohibiting placement in a halfway house, unless the inmate was in the last ten percent of their term of imprisonment, exceeded BOP's statutory rulemaking authority. "By sorting prisoners' eligibility for one of the institutions on the 'available penal or correctional facility' list only according to the portion of time served, the BOP . . . unlawfully excised these parameters from the statute." *Levine*, 455 F.3d at 87. In other words, although 18 U.S.C. § 3621(b) gives BOP considerable discretion in making placement decisions, that discretion is

expressly conditioned on BOP's consideration of the enumerated statutory factors, of which portion of time served is not one.

While "the § 3621 factors [are] non-exclusive . . . [and] certainly permits the BOP to consider the portion of time served in making placements . . . such an unlisted factor cannot unilaterally and categorically supplant the statutory list." *Id.* at 86. In that case, when BOP "fus[ed] the entire placement analysis with respect to [halfway houses] into a single category grounded on the length of an inmate's remaining sentence, [the contested rule] eliminated from consideration each of the statutory factors that turn, instead, on the inmate's specific history." *Id.* at 87.

Respondent argues that 18 U.S.C. § 3621(b) authorizes the policy barring noncitizens with detainers from prerelease custody because BOP retains "traditional discretion over a prisoner's place of imprisonment," and the First Step Act has not displaced this authority. *See* Response at 15-16.

Petitioner argues that Respondent's position was rejected by the Second Circuit in *Levine v. Apker*, 455 F.3d 71 (2d Cir. 2006).

The Court agrees.

Just as the Second Circuit in *Levine* struck down the rule conditioning eligibility for placement in a halfway house on the portion of time served, Section 3621 similarly does not authorize the January 2025 policy. The January 2025 policy prohibits placing noncitizens in prerelease custody, if they have an active immigration detainer lodged against them. This policy, much like the rule in *Levine*, determines an inmate's eligibility for placement in a halfway house solely based on the existence of a factor not included in Section 3621(b)'s list for consideration.

16

Creating a categorical exclusion based on "such an unlisted factor cannot unilaterally and categorically supplant the statutory list." *Levine*, 455 F.3d at 86.

While the existence of an immigration detainer could fit within "the history and characteristics of the prisoner" factor included in the statute, this factor is specific to individual prisoners and cannot form the basis for a categorical rule. *Id.* at 86 (noting that "of the five statutory factors that must be considered, at least three—the nature and circumstances of a prisoner's offense, the history and characteristics of the prisoner, and any statement by the court that imposed the sentence—are specific to individual prisoners. As a result, considering these factors entails individualized decisions.") (internal citations omitted); *see also Evans v. Willingham*, 413 F. Supp. 2d 155, 160 (D. Conn. 2006) (noting "[t]he BOP cannot consider those factors—as section 3621(b) requires it to do—with a categorical rule. . .."). The January 2025 policy, which relies exclusively on an unenumerated factor in categorically restricting inmates' placement in halfway houses, impermissibly curtails BOP's discretion under 18 U.S.C. § 3621(b), and therefore may not be justified under it.

Although BOP retains broad discretion in several areas, such as determining an inmate's place of imprisonment under Section 3621(b) or imposing additional conditions on those in prerelease custody under Section 3624(g)(2)(B), "[c]ategorical rulemaking, like all forms of agency regulation, must be consistent with unambiguous Congressional instructions." *Levine*, 455 F.3d at 85.

And Congress unambiguously expressed that only those noncitizens who are subject to a final order of removal would be ineligible to apply time credits earned under the First Step Act. 18 U.S.C. § 3632(d)(4)(E)(i) ("A prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of the

immigration laws. . .”). An immigration detainer is neither an order of removal nor final. They are simply requests that federal officials maintain custody over an individual whom the government has probable cause to believe is removable in order to minimize the risks of apprehending a removable individual at-large. 8 C.F.R. § 287.7(a) (“A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.”); *see Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (“The sole purpose of a detainer is to request the continued detention of an alien so that ICE officials may assume custody of that alien and investigate whether to initiate removal proceedings against her.”) (internal citations omitted).

By choosing to exclude only those with final orders of removal, Congress chose not to include lesser categories of individuals with pending or unresolved immigration issues. *See Succar v. Ashcroft,* 394 F.3d 8, 10 (1st Cir. 2005) (holding that the Attorney General cannot promulgate a regulation that categorically excludes a category of otherwise eligible noncitizens, because Congress had expressed clear intent as to what categories the Attorney General could consider for eligibility and what classes it could not).

As a result, BOP cannot, through a policy pronouncement, amend Section 3632(d)(4)(E)(i) to include those with immigration detainers, since categorical rulemaking done under a grant of broad discretion must still “track or effectuate legislative text”. *See Levine*, 455 F.3d at 86 (noting that “[w]hat agencies may not do, however, is edit a statute[,]” and stating that rules must “track or effectuate legislative text[]”); *see also Wesa v. Engleman*, No. 2:25-cv-

03413-WLH-DTB, 2025 WL 1675536 at *4 (C.D. Cal. May 23, 2025) ("If it had been Congress'
intention to render noncitizens who are subject to immigration detainers – though *not* a final
order of removal – ineligible to apply FSA Credits, Congress presumably would have said so.")
(citations and internal quotation remarks omitted) (emphasis in original).

Accordingly, there is no basis for denying Mr. Mateo's habeas petition on these grounds.

### 3. The Use of the January 2025 Policy as a "Condition" of Prerelease Custody

Under 18 U.S.C. § 3624(g)(2)(B), "[a] prisoner placed in prerelease custody pursuant to
this subsection who is placed at a residential reentry center shall be subject to such conditions as
the Director of the Bureau of Prisons determines appropriate." "If a prisoner violates a condition
of the prisoner's prerelease custody, the Director of the Bureau of Prisons may . . . revoke the
prisoner's prerelease custody and require the prisoner to serve the remainder of the term of
imprisonment to which the prisoner was sentenced, or any portion thereof, in prison." *Id.* at
§ 3624(g)(5).

Respondent argues that this language grants BOP "broad policy discretion to impose
additional conditions on prisoners placed in prerelease custody as BOP determines appropriate"
and that the January 2025 policy directive is one such condition that justifies Mr. Mateo's
reincarceration at FCI Danbury. *See* Response at 13-15; *see* 18 U.S.C. § 3632(d)(4)(C) (noting
that the transfer of eligible prisoners is subject to Section 3624(g)); *see also* 18 U.S.C. § 3624(g)
(stating that a prisoner in prerelease custody placed at a residential reentry center "shall be
subject to such conditions as the Director of the Bureau of Prisons determines appropriate.").

In response, Petitioner argues that Section 3624(g)(2)(B) only "speaks to rules and
regulations to which individuals who are already placed in RRC are subject," and even if Section
3624(g)(2)(B) were to authorize the policy, the policy would be constitutionally suspect under

both the procedural due process guarantee of the Fifth Amendment and the Ex Post Facto Clause of the Constitution.

The Court agrees.

Because this Court finds that Section 3624(g)(2)(B) does not authorize BOP's policy, it need not reach the constitutional concerns presented.

Section 3624(g) provides a general grant of discretion to the BOP Director to place additional conditions on inmates placed in prerelease custody under the First Step Act. An inmate's eligibility to apply their time credits to prerelease custody, however, is controlled by a more specific provision, 18 U.S.C. § 3632(d)(4). The Respondent's 18 U.S.C. § 3624(g) argument as to its statutory authorization for Mr. Mateo's reincarceration fares no better than the other arguments rejected above. Indeed, consistent with well-established principles of statutory construction, BOP has no statutory authority to condition Mr. Mateo's prerelease custody on the issuance of an immigration detainer.

To the extent there is an alleged conflict between the general statutory authority given to the BOP by Congress under Section 3624(g) and the specific statutory command from Congress as to how BOP must determine eligibility for prerelease custody in Section 3632(d), the more specific provision, Section 3632(d), prevails. *See Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 153 (1976) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.") (quoting *Morton v. Mancari,* 417 U.S. 535, 550–51 (1974)); *see also Greene v. United States,* 79 F.3d 1348, 1355 (2d Cir. 1996) ("When two statutes are in conflict, that statute which addresses the matter at issue in specific terms controls over a statute which addresses the issue in general terms, unless Congress has manifested a contrary aim.").

And, as discussed above, Section 3632(d) only eliminates from eligibility for the application of First Step Act time credits those who are "the subject of a final order of removal under any provision of the immigration laws. . ." 18 U.S.C. § 3632(d)(4)(E)(i). Thus, consistent with that limitation on the BOP's authority to limit eligibility for time credits, and prerelease custody, the BOP cannot credibly claim a general grant of discretion to apply conditions on prerelease custody in Section 3624(g) to modify or qualify the specific exceptions to eligibility detailed in Section 3632(d)(4). *See Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 300 (2d Cir. 2002) ("In addition to the plain meaning of the statute's language, the canon of statutory interpretation known as *generalia specialibus non derogant*—general provisions do not qualify specific ones—is applicable here."); *cf. id.* at 300-301 ("It would be odd for Congress to have taken pains to enact subsection (d)(2)(A) with its specific procedure for filing an *in rem* action in the judicial district in which the domain register . . . is located, only to qualify, and indeed nullify, that circumscribed requirement by effectively creating nationwide *in rem* jurisdiction in subsection (d)(2)(C)."). As a result, any such reading of Section 3624(g) "would have the effect of rendering the language of [Section 3632(d)(4)] superfluous – a result frowned upon by courts." *Id.* at 301 (citations and internal quotation marks omitted).

Accordingly, there is no basis for denying Mr. Mateo's habeas petition on these grounds.

## IV.    CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **GRANTED,** and the motion for a temporary restraining order is **DISMISSED** as moot.

The Court **ORDERS** that:

4.  Respondent shall immediately transfer Mr. Mateo to prerelease custody. Respondent shall not remove Mr. Mateo from prerelease custody based on his immigration status alone, absent a material change to the factual record before the Court.

5.  Should a material change in the factual record occur, the Respondent must immediately notify Mr. Mateo's counsel and this Court before any change in Mr. Mateo's custodial status is effectuated.

6.  Respondent shall file a status report by **September 19, 2025**, informing the Court as to whether Mr. Mateo has been returned to prerelease custody.

**SO ORDERED** at New Haven, Connecticut, this 11th day of September, 2025.

/s/ Victor A. Bolden

VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE